IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

**DENISE KONKLE,**

*Plaintiff*

**v.** **CASE NO. 4:25-CV-00210-SEB-KMB**

**CHARLES MOON, ET AL.,**

*Defendants*

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT JAMEY NOEL'S MOTION FOR LEAVE TO FILE MOTION TO DISMISS AND TO THE PROPOSED MOTION TO DISMISS (DKT. 49)**

---

Plaintiff, Denise Konkle, by counsel, responds in opposition to the Motion for Leave to File Motion to Dismiss filed by Defendant Jamey Noel, pro se (Dkt. 49), and to the proposed Motion to Dismiss and Memorandum of Law attached to it (Dkts. 49-1 and 49-2). Because Dkt. 49 is styled as a motion for leave but carries a dispositive motion with it, Plaintiff responds to both in one filing so that no reading of the briefing rules leaves the proposed motion unanswered.

## PRELIMINARY STATEMENT

Mr. Noel asks for leave, "if required," to file his own motion to dismiss or, in the alternative, to join the motion to dismiss the other Defendants filed in December 2025 (Dkt. 13). Dkt. 49 at 1. Plaintiff does not object to the Court treating Mr. Noel as having joined Dkt. 13, provided her

Response in Opposition to that motion (Dkt. 25) is treated as her response to him. She opposes any separate dismissal, for the reasons already set out in Dkt. 25 and for the reasons specific to Mr. Noel below. And she asks the Court to hold him to the procedural posture he chose. He answered the Complaint on December 1, 2025 (Dkt. 10). A motion to dismiss for failure to state a claim filed after an answer is a motion for judgment on the pleadings under Rule 12(c), and it is decided on the pleadings, not on the movant's own account of the facts.

Mr. Noel's sixty-five page memorandum returns again and again to two facts: that he "was not a party to or involved in" the quo warranto action, and that he "recused himself" from the censure hearing. Dkt. 49-2 at 2-4, 13-17, 52-58, 65. Neither fact appears in the Complaint. Both are denials. The Complaint alleges the opposite: that Mr. Noel called the censure hearing, kept functional control of it after a nominal recusal, instructed the presiding officials on the outcome, and then directed, encouraged, or funded the quo warranto lawsuit through a political network he had built with his money and his offices. Compl. ¶¶ 54-58, 83, 90-99, 139-147 (Dkt. 1). On a Rule 12(c) motion those allegations are taken as true. Mr. Noel's denials are what discovery and trial are for.

The rest of his memorandum tracks, section for section, the memorandum the represented Defendants filed at Dkt. 14. Plaintiff answered those arguments at Dkt. 25, and that motion remains pending. Dkt. 44 at 2. Rather than repeat thirty-one pages, Plaintiff incorporates Dkt. 25 and addresses here only what is new.

## I. THE MOTION FOR LEAVE, AND THE STANDARD THAT GOVERNS THE PROPOSED MOTION

### *A. Plaintiff does not oppose joinder in Dkt. 13, with Dkt. 25 applied to Mr. Noel.*

Mr. Noel's alternative request, to join the other Defendants' motion to dismiss, is the efficient path. The arguments are the same. The briefing is complete. Plaintiff therefore does not object to an order treating Mr. Noel as a movant on Dkt. 13, so long as Dkt. 25 is deemed Plaintiff's response as to him and the Court considers the additional points below. Plaintiff opposes leave to the extent Mr. Noel seeks a separate, free-standing dismissal on his own factual narrative, for the reasons in Parts II through VI.

### *B. Mr. Noel answered, so his motion is a Rule 12(c) motion governed by the Rule 12(b)(6) standard.*

A motion asserting failure to state a claim "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Mr. Noel filed his Answer on December 1, 2025. Dkt. 10. The defense survives his answer, but after the pleadings close, the defense is raised "by a motion under Rule 12(c)." Fed. R. Civ. P. 12(h)(2)(B). The Seventh Circuit treats a post-answer Rule 12(b)(6) motion exactly that way. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 n.6 (7th Cir. 2000) ("because Defendants previously filed their answer, the district court correctly construed Defendants' motion as a motion for judgment on the pleadings under Rule 12(c)").

The relabeling does not lower the bar for Mr. Noel. A Rule 12(c) motion "is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014). The Court accepts the well-pleaded allegations as true and draws every reasonable inference for the Plaintiff. *Forseth*, 199 F.3d at 368.

A complaint survives if it states a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court does not weigh competing narratives or credit a defendant's explanation at this stage. The plaintiff need only give enough detail to present a story that holds together, and the question is whether the story could have happened, not whether it did. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

Mr. Noel is entitled to a liberal reading of his own filings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). That principle governs how the Court reads his filing. It does not entitle him to having the Court read his facts into Plaintiff's Complaint, and it does not convert his denials into a pleading defect on her side.

### *C. The Court should exclude Mr. Noel's factual assertions or, if it considers them, convert the motion and allow discovery.*

If the Court were inclined to consider the matters Mr. Noel asserts outside the pleadings, Rule 12(d) requires that the motion "be treated as one for summary judgment under Rule 56," and that all parties have "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Discovery is ongoing. The four represented Defendants are set for deposition on October 6 and October 19, 2026, and Mr. Noel is incarcerated and cannot be deposed without leave under Rule 30(a)(2)(B). Plaintiff has not had the opportunity to test his account. The better course is to exclude the extra-pleading assertions and decide the motion on the Complaint.

## II. MR. NOEL'S MEMORANDUM RESTS ON FACTS THE COMPLAINT DOES NOT ALLEGE AND THE COURT MAY NOT CREDIT

Mr. Noel's introduction and fact section describe a different case from the one Plaintiff pleaded. He states that he was "not a party to or involved in" the quo warranto action; that he never held elected office in Floyd County; that the Ninth District Republican Committee is "a private volunteer political association"; that he called the censure hearing only at the county chair's request and "recused himself at the hearing"; and that he "abstained from voting." Dkt. 49-2 at 2-6, 8-12. His Answer says the same thing in two lines: that he "was not involved in the factual allegations," and that he "recused or abstained from voting in any Republican Party matter in ref to the Plaintiff." Dkt. 10 at 2.

Those are denials. The Complaint alleges:

- Mr. Noel held three positions at once from 2015 through 2022, Clark County Sheriff, Clark County Republican Chairman, and Chairman of the Indiana Ninth District Republican Committee, and he co-founded and ran New Chapel EMS, a private ambulance company holding the Floyd County 911 contract. Compl. ¶¶ 14-17. Plaintiff's votes on ambulance service threatened that contract. Compl. ¶¶ 37-41, 47.
- Ms. Archibald-Peters "worked directly under Noel's leadership" and "acted in coordination with Noel to maintain control over local Republican politics." Compl. ¶¶ 26-27. Charles Moon and Daniel Short each took campaign money from the Noel family, creating "relationships of political dependency and loyalty that influenced their

actions regarding ambulance services and their treatment of Plaintiff." Compl. ¶¶ 29, 34, 36.

- Mr. Noel chaired the committee that heard the censure complaint against Plaintiff, "did not initially recuse himself," and, after Plaintiff publicly called for his recusal, "retained functional control over the hearing and had instructed the presiding party officials as to how to proceed and what outcome to reach." Compl. ¶¶ 54-57. The committee stripped Plaintiff of her standing as a Republican for five years and barred her from running as a Republican through 2028. Compl. ¶ 58.
- The quo warranto suit was filed two months later by a member of that network, and the other three Defendants joined it after Plaintiff challenged the original petitioner's standing. Compl. ¶¶ 72, 79-83, 90-93. Mr. Noel "directed, encouraged, or funded the quo warranto lawsuit as part of his broader campaign to silence Plaintiff's opposition to New Chapel EMS." Compl. ¶ 99; see also ¶ 145. The Defendants "communicated with each other and with Defendant Noel regarding the plan to challenge Plaintiff's residency and remove her from office." Compl. ¶ 98.
- Mr. Noel "coordinated with and directed sitting state and county officials (including the individual Defendants) in furtherance of the campaign against Plaintiff," and "acted in joint action with sitting state and county officials and officeholders." Compl. ¶¶ 144, 146.

Every one of those allegations is entitled to be taken as true. Mr. Noel's memorandum does not argue that they are conclusory. It argues that they are wrong. That is a summary judgment argument, and it needs a record. The Court should decline to resolve it on his say-so.

## III. THE ARGUMENTS MR. NOEL BORROWS FROM DKT. 14 ARE ANSWERED IN DKT. 25

Mr. Noel's eight argument sections follow the represented Defendants' memorandum, often citing the same authorities for the same propositions. Plaintiff has already answered each of them, and incorporates those answers by reference:

- Color of state law and joint action (Dkt. 49-2 at 13-17) is answered at Dkt. 25 at 5-12, including *West v. Atkins*, 487 U.S. 42 (1988), *Dennis v. Sparks*, 449 U.S. 24 (1980), and *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982).
- First Amendment retaliation (Dkt. 49-2 at 24-30) is answered at Dkt. 25 at 12-14, including the objective "ordinary firmness" standard of *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009), and the limits of *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468 (2022).
- Procedural due process (Dkt. 49-2 at 38-44) is answered at Dkt. 25 at 14-16.
- Section 1985(3) (Dkt. 49-2 at 18-23) is answered at Dkt. 25 at 16-19, and supplemented in Part V below.
- Equal protection (Dkt. 49-2 at 45-51) is answered at Dkt. 25 at 19-22.
- Substantive due process (Dkt. 49-2 at 31-37) is answered at Dkt. 25 at 22-25.

- Malicious prosecution and abuse of process (Dkt. 49-2 at 52-64) are answered at Dkt. 25 at 25-28, and supplemented in Part VI below.
- The Indiana Tort Claims Act (Dkt. 49-2 at 8, 12) is answered at Dkt. 25 at 28-30, and supplemented in Part VI below.

What follows addresses the points that are particular to Mr. Noel: his personal participation, his reliance on his recusal and his non-party status, and the sex-based animus he does not mention.

## IV. THE COMPLAINT PLAUSIBLY ALLEGES MR. NOEL'S PERSONAL PARTICIPATION AND JOINT ACTION UNDER COLOR OF STATE LAW

### *A. A private participant in a conspiracy with state actors acts under color of state law.*

Mr. Noel's first argument is that he cannot be liable under § 1983 because the Ninth District Republican Committee is a private association and he held no Floyd County office. Dkt. 49-2 at 13-17. Even on his own account of his status, that argument fails. Acting under color of state law "does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents." *Dennis*, 449 U.S. at 27-28; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (same, quoting *United States v. Price*, 383 U.S. 787, 794 (1966)). To plead conspiracy liability under § 1983, a plaintiff must allege "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015).

The Complaint alleges both. It alleges an agreement among the Defendants, "and with Defendant Noel," to use party discipline, legal process, and public attacks to punish Plaintiff and

remove her from office. Compl. ¶ 95. It alleges communications among them about the plan. Compl. ¶ 98. It alleges the overt acts, from the censure complaint through two years of quo warranto litigation and an appeal. Compl. ¶¶ 50-61, 72-83, 96, 171. And it alleges that two of Mr. Noel's co-conspirators, Ms. Moon and Mr. Short, were sitting county council members who invoked their offices to claim standing to remove Plaintiff, and that Ms. Archibald-Peters invoked her state-delegated authority as county chair to do the same. Compl. ¶¶ 80-81, 121-125, 130-135. Dkt. 25 explains why those invocations of official authority are action under color of state law. Dkt. 25 at 5-12. If they are, then Mr. Noel, who is alleged to have directed and funded the joint enterprise, is liable with them. *Dennis*, 449 U.S. at 27-28.

The Complaint is specific about why Mr. Noel is the center of the alleged conspiracy rather than a bystander to it. He had the motive: a county contract worth hundreds of thousands of dollars a year, held by his company, that Plaintiff was working to replace. Compl. ¶¶ 15, 17, 37-41, 47. He had the means: the chairmanship that controlled party discipline and candidate endorsements, and the financial relationships with the other Defendants. Compl. ¶¶ 16, 26-36, 141. And he is alleged to have used both, first through the censure and then through the lawsuit. Compl. ¶¶ 54-58, 90-99, 142-146. That is a story that holds together, which is all *Twombly* requires at this stage. *Swanson*, 614 F.3d at 404.

### *B. The recusal and the non-party status are denials, not defects in the pleading.*

Mr. Noel's answer to all of this is that he recused himself from the censure hearing and was never a party to the quo warranto case. Dkt. 49-2 at 3-4, 6, 17, 54, 61. The Complaint pleads around both facts, and it does so with specificity.

On the censure, the Complaint alleges that Mr. Noel chaired the committee, that he did not initially recuse, that he stepped aside from presiding only after Plaintiff publicly demanded it, and that "the conduct of the hearing made clear that Noel had retained functional control over the hearing and had instructed the presiding party officials as to how to proceed and what outcome to reach." Compl. ¶¶ 54-57. A recusal from the chair is not a recusal from the room. Whether Mr. Noel in fact directed the hearing after handing off the gavel is a question of fact. His Answer denies it. Dkt. 10 at 2. The Complaint alleges it. On this motion the Complaint controls.

On the quo warranto action, the Complaint does not allege that Mr. Noel was a named petitioner. It alleges that he "directed, encouraged, or funded" the suit, that the petitioners were members of his political network with financial ties to him, and that the timing and sequence of the censure and the suit show coordination. Compl. ¶¶ 83, 90-93, 99, 145. A defendant who procures a proceeding through others is not insulated because his name is not on the caption. That is true under § 1983, where liability runs to every participant in the joint action, *Dennis*, 449 U.S. at 27-28, and it is true under Indiana malicious prosecution law, where the first element is satisfied by a defendant who "instituted or caused to be instituted" the action. *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001). Mr. Noel cites *Reichhart* himself. Dkt. 49-2 at 53.

Mr. Noel is free to prove that he stayed out of both. He cannot obtain judgment on the pleadings by asserting it.

## V. FIRST AMENDMENT RETALIATION AND SECTION 1985(3): TWO POINTS MR. NOEL GETS WRONG

### *A. Continued speech is not a defense to retaliation.*

Mr. Noel argues that Plaintiff's retaliation claim fails because she "continued to advocate publicly, continued to serve on the county council, and continued to exercise independent political judgement." Dkt. 49-2 at 28; see also id. at 4, 11. The argument misstates the element. The test is objective: whether the retaliatory conduct would "deter a person of ordinary firmness" from exercising her First Amendment rights. *Bridges*, 557 F.3d at 552 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). It is not whether this plaintiff was actually silenced. The Seventh Circuit put it this way more than forty years ago: "The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable." *Bart*, 677 F.2d at 625. Mr. Noel's own authorities apply the same objective standard. See Dkt. 49-2 at 24-25 (citing *Bridges* and *Surita v. Hyde*, 665 F.3d 860, 878-79 (7th Cir. 2011)).

The conduct alleged here is serious. It includes a five-year revocation of Plaintiff's standing in her party, with a bar on running as a Republican through 2028, imposed within weeks of her vote; a lawsuit to remove her from the office the voters gave her, filed nine days before she closed on her Floyd County home and prosecuted for two years through an appeal; an election board complaint that produced a special prosecutor referral; and more than $72,000 in legal fees. Compl. ¶¶ 58, 70-72, 104-105, 110-111, 126-127. A person of ordinary firmness would think hard before casting the next independent vote. That Plaintiff kept voting is to her credit. It goes to damages and to proof, not to whether a claim is stated. Dkt. 25 at 12-14.

### *B. Section 1985(3) reaches the sex-based conspiracy the Complaint alleges.*

Mr. Noel's § 1985(3) argument is that the statute does not reach "nonracial political conspiracies." Dkt. 49-2 at 18-23 (citing *Grimes v. Smith*, 776 F.2d 1359 (7th Cir. 1985)). Plaintiff has explained why political animus of the kind alleged here is actionable. Dkt. 25 at 16-19. But Mr. Noel's argument also skips an allegation. The Complaint pleads that the conspiracy was motivated by animus against Plaintiff "based on her political speech, her exercise of independent judgment, and her status as a female elected official challenging a male-dominated political machine." Compl. ¶ 172.

The Seventh Circuit has held that § 1985(3) "extends beyond conspiracies to discriminate against persons based on race to conspiracies to discriminate against persons based on sex, religion, ethnicity or political loyalty." *Volk v. Coler*, 845 F.2d 1422, 1434 (7th Cir. 1988). *Volk* was decided after *Grimes*, by the same court, and it lists both sex and political loyalty among the protected classes. A plaintiff proceeding on a sex-based theory "need not prove that there was an agreement to discriminate against an entire class of women." *Id.* at 1434. Mr. Noel does not address ¶ 172 or *Volk*. Whether the Defendants' campaign against the one female council member who crossed them was driven in part by her sex is a question for discovery, and the men who ran the campaign are the witnesses on it.

## VI. THE STATE-LAW CLAIMS ARE ADEQUATELY PLEADED AGAINST MR. NOEL

### *A. Malicious prosecution.*

Mr. Noel argues that the quo warranto action was supported by probable cause, that it did not terminate in Plaintiff's favor because the Court of Appeals affirmed on standing, and that he was

not a party to it. Dkt. 49-2 at 52-58. Plaintiff answered the first two arguments at Dkt. 25 at 25-27, and the third is answered in Part IV above. The argument fails for three reasons.

First, Indiana requires that the defendant "instituted or caused to be instituted" the action, acted with malice, lacked probable cause, and that the action "terminated in the plaintiff's favor." *Reichhart*, 748 N.E.2d at 378. The Complaint pleads each element as to Mr. Noel specifically. Compl. ¶¶ 99, 145 (caused the action to be instituted); ¶¶ 84-88, 178-180 (no probable cause); ¶¶ 89, 181-182 (malice); ¶¶ 102-109, 177 (favorable termination).

Second, Mr. Noel treats the Court of Appeals' standing ruling as the whole story. It is not. The trial court granted summary judgment for Plaintiff and dismissed the petition with prejudice on July 5, 2024, without findings, so the judgment may rest on the merits, on standing, or on both. Compl. ¶¶ 102-103. The Court of Appeals affirmed. Compl. ¶ 105. Indiana law is direct on the effect of that judgment: "Entry of summary judgment in favor of a prior defendant clearly constitutes termination in his favor." *Wong v. Tabor*, 422 N.E.2d 1279, 1284 (Ind. Ct. App. 1981). Mr. Noel cites *Wong* for the probable cause standard, Dkt. 49-2 at 53, but not for this. What the trial court's judgment rested on, and what that means for the termination element, cannot be decided against Plaintiff on the pleadings.

Third, probable cause exists "when a reasonably intelligent and prudent person would be induced to act as did the person who is charged with the burden of having probable cause." *Reichhart*, 748 N.E.2d at 379. The Complaint alleges what the petitioners knew when they filed: that Plaintiff kept her license, voter registration, mail, and billing addresses in Floyd County; that she had an active purchase agreement on a Floyd County home and was days from closing; that

she had consulted the council attorney and the State Election Board; and that Charles Moon then told the public her purchase agreement had "fallen through," which was false. Compl. ¶¶ 66-70, 75-78. It alleges that the petitioners knew or should have known they lacked standing under settled Indiana law. Compl. ¶¶ 84-88. Whether a reasonably prudent person with that knowledge would have filed a petition to strip a council member of her office is a fact question. Mr. Noel's argument that a standing dismissal "does not retroactively negate probable cause," Dkt. 49-2 at 54, answers a point Plaintiff does not make. Her claim is that there was no probable cause when the petition was filed, and none when the other Defendants joined it to shore up standing. Compl. ¶¶ 79-88.

### *B. Abuse of process.*

Mr. Noel argues that the Complaint alleges no misuse of process after issuance. Dkt. 49-2 at 59-64. Plaintiff answered that argument at Dkt. 25 at 27-28. The Complaint alleges post-filing acts in the use of the process itself: continuing the suit after Plaintiff closed on her Floyd County home and the residency premise was gone, Compl. ¶ 182(f); amending the petition to add three co-petitioners for the purpose of manufacturing standing after the original petitioner's was challenged, Compl. ¶¶ 79-82; and posting Plaintiff's deposition transcript and divorce records from the litigation on social media to humiliate her, Compl. ¶¶ 114, 188(f). Those are uses of the process rather than merely commentary about it. They are attributed to Mr. Noel through the same agreement and direction alleged throughout. Compl. ¶¶ 95, 99, 145.

### *C. The Indiana Tort Claims Act does not apply to Mr. Noel.*

Mr. Noel argues in one part of his memorandum that he was a purely private actor, a volunteer chairman of a private association, and in another that Plaintiff's state claims fail because she did not plead compliance with the Indiana Tort Claims Act and cannot overcome its immunity. Dkt. 49-2 at 6, 8, 12. He cannot have both. The Act's notice provisions and immunities protect governmental entities and their employees for conduct within the scope of employment. Ind. Code § 34-13-3-3; Ind. Code § 34-13-3-5(b), (c); *Burton v. Benner*, 140 N.E.3d 848, 852 (Ind. 2020). Mr. Noel was not a Floyd County employee. He was not, in 2023, a Clark County employee either; his term as sheriff ended in 2022. Compl. ¶ 6. And by his own description, the Ninth District Republican Committee is a private volunteer association. Dkt. 49-2 at 2, 5-6. The state-law claims against him are individual-capacity claims for personal conduct, and the Act has nothing to say about them. Dkt. 25 at 28-30.

## CONCLUSION

Mr. Noel answered the Complaint nine months ago and now asks the Court to dismiss it on his version of the facts. The Rules do not allow that. His motion is a Rule 12(c) motion, it is decided on the pleadings, and the pleadings allege that he built the network, called the hearing, controlled its outcome, and directed and funded the lawsuit that followed. The arguments he borrows from the represented Defendants are answered at Dkt. 25.

Plaintiff respectfully requests that the Court (1) treat Mr. Noel as having joined the pending Motion to Dismiss at Dkt. 13, with Dkt. 25 deemed Plaintiff's response as to him, and deny that motion as to all Defendants for the reasons stated in Dkt. 25 and herein; (2) deny the Motion for Leave (Dkt. 49) to the extent it seeks a separate dismissal on grounds outside the pleadings, or deny the proposed Motion to Dismiss (Dkt. 49-1) on the merits; (3) in the alternative, if the Court considers Mr. Noel's factual assertions, treat the motion as one for summary judgment under Rule 12(d) and afford Plaintiff the discovery Rule 56(d) contemplates before ruling; and (4) grant all other just and proper relief.

Respectfully submitted,

/s/ Matthew J. Schad
Matthew J. Schad, #20762-22
Mickey K. Weber, #27432-10
SCHAD LAW, P.C.
309 Pearl Street, Second Floor
New Albany, IN 47150
(812) 945-4555 / Fax (727) 897-8031
mschad@schadlaw.com
mweber@schadlaw.com
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2026, the foregoing was filed electronically and served electronically on all counsel of record, and mailed to the pro se Defendant at the following address:

JAMEY NOEL, DOC #301710
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box A
New Castle, IN 47362

/s/ Matthew J. Schad
Matthew J. Schad